Darrell Todd DOUGLAS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45S00–9505–CR–601.

Supreme Court of Indiana.

April 24, 1996.

**1154**

Charles E. Stewart, Jr., Appellate Public Defender, Crown Point, for appellant.

Pamela Carter, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for appellee.

SHEPARD, Chief Justice.

On July 29, 1994, Darrel Todd Douglas shot and killed Glen Givens. A jury found Douglas guilty of murder, Ind.Code Ann. § 35–42–1–1 (West Supp.1995), and the trial court sentenced him to sixty years in prison.

The evidence at trial showed that Douglas suddenly appeared next to a car parked outside a liquor store in Gary sometime after 10 p.m. He asked Givens, who was seated behind the driver's seat, for a light for his cigarette. Givens told him he should not sneak up on people, that he was liable to get shot, but offered him the light anyway. Douglas leaned over to get the light, then drew a gun from behind his back and shot Givens twice in the head.

Douglas raises two issues on direct appeal. First, he claims he was denied effective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution and Article I, Section 13 of the Indiana Constitution. He claims his trial counsel failed to raise an insanity defense, did not make an opening statement, did not cross-examine several witnesses, and made questionable remarks during his closing arguments and at the sentencing hearing. Second, Douglas claims that the trial court wrongly refused his request to plead guilty during trial.

**I. Ineffective Assistance of Counsel**

▮ Claims concerning ineffective assistance of counsel are evaluated using the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1] To prevail, Douglas must show that his attorney's performance fell below an objective standard of reasonableness, *id.* at 687–91, 104 S.Ct. at 2064–69, and that this substandard performance deprived him of a fair trial, *id.* at 691–96, 104 S.Ct. at 2066–69. Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable care. *Id.* at 689, 104 S.Ct. at 2065. An attorney's performance during trial may be criticized, but "[i]solated poor strategy, inexperience, or bad tactics do not necessarily constitute inef-

---

1. Douglas has not provided any separate argument with respect to his state constitutional claim and accordingly presents nothing for our review.

fective assistance of counsel." *Thornton v. State,* 570 N.E.2d 35, 37 (Ind.1991).

■ As for counsel's failure to raise an insanity defense, we note that the court appointed two psychiatrists to examine Douglas. They both determined that the bizarre behavior he exhibited while incarcerated was a ruse. One of the psychiatrists concluded, "On the basis of all the information available to me and from my own observation, it is my opinion that Mr. Douglas suffers from a factitious disorder. In effect, he is trying to appear incompetent." (R. 32). The other psychiatrist agreed: "It is my opinion the defendant is competent and understands the existing information leading to his current legal predicament." (R. 34).

Our code recognizes insanity as a defense when a defendant suffers from a mental disease or defect that renders him unable to appreciate the wrongfulness of his actions. Ind.Code Ann. § 35–41–3–6 (West 1986). The psychiatric evidence available to counsel suggest that it was a reasonable strategy not to raise the insanity defense and that failure to have done so does not support a claim for ineffective assistance of counsel. *Osborne v. State,* 481 N.E.2d 376 (Ind.1985).

■ Douglas further claims that trial counsel's failure to make an opening statement denied him effective assistance of counsel. The decision not to make an opening statement is a matter of trial strategy and will not support an ineffective assistance claim. *Nuckles v. State,* 560 N.E.2d 660, 662 (Ind.1990).

■ Douglas next contends that trial counsel should have cross-examined the two investigating detectives, the pathologist who performed the autopsy on the victim, and the two experts who did the ballistics examination of the bullet removed from the victim. He claims that trial counsel's decision to forego cross-examination of these witnesses amounted to abandonment and resulted in a breakdown of the adversarial process during trial. *See Williams v. State,* 508 N.E.2d

1264 (Ind.1987); *Hiner v. State,* 557 N.E.2d 1090 (Ind.Ct.App.1990). The testimony of these witnesses, however, did not add anything new to the case; they testified about undisputed matters. Trial counsel did not abandon Douglas. He cross-examined two eyewitnesses, and challenged the accuracy of their identification of Douglas. Trial counsel also competently tried to suppress the results of a photographic line-up, in which one of the witnesses identified Douglas.

Trial counsel's decision not to cross-examine all of the witnesses was clearly a matter of strategy. His actions were not analogous to the abandonment in *Hiner* and *Williams.* The witnesses who were not cross-examined could not have advanced trial counsel's strategy. As a consequence, we conclude that the decision not to cross-examine them was reasonable.

■ Finally, Douglas cites unsympathetic comments counsel made during closing argument and during the sentencing hearing. In his closing argument, defense counsel said that the killing was "senseless." He told the jury that Douglas was either "the craziest person on earth, or one of society's most dangerous persons." Counsel distanced himself and the African–American community from Douglas. He told the jury that "All black people are not like that. We're not savages, we're not animals." (R. 347–348). Counsel's closing arguments, while understandable given the nature of the case, were a negative portrayal of his client.

We have some sympathy for the position counsel confronted by the time final argument and sentencing hearing occurred. His client had feigned insanity by playing with his own feces, among other things. Still, we think the client was entitled to more.

We conclude that counsel's arguments to the jury and the sentencing judge fell below the standard of reasonable assistance required by the first prong of *Strickland.*[2]

■ Nevertheless, the strength of the evidence leads us to conclude that counsel's remarks did not change the outcome of this

---

**2.** During the sentencing hearing, trial counsel attempted to extend sympathy to the victims families by saying the killing was "unprovoked" and that it "should never have happened." (R. 369) Counsel then went on to say … "if he's not

crazy, he's America's worst and dangerous nightmare. I don't know which is which" (R. 370).

Counsel's comments are similar to the comments made by defense counsel in *Burris v. State* (1990), Ind., 558 N.E.2d 1067 *reh'g denied.* Trial

case. Two eyewitnesses who were in the car when Douglas shot Givens positively identified Douglas as the killer. More important to the point, Douglas took the stand, against the advice of counsel. He engaged in a lengthy tirade, some of it unintelligible, and then admitted shooting the victim. Douglas' confession in open court did him far more damage than the remarks made later by his lawyer.

Douglas was not denied effective assistance of counsel. The prejudice prong of the *Strickland* test was not satisfied because the outcome of the trial would not have been different but for counsel's ineffectiveness. Therefore, his claim of ineffective assistance of counsel fails.

## II. Refusal to Accept Plea

Douglas claims that the trial court erred by denying the request he made during trial to change his plea from not guilty to guilty. He claims that the Indiana Code requires a hearing to determine whether he was competent to stand trial and does not afford the trial court any discretion. Section 35-35-1-4(a) (West 1986) states that a defendant may make an oral motion in open court to withdraw a plea of not guilty and need not state any reason. The predecessor statute required that this motion be made in writing, state facts showing why the plea should be withdrawn, and state in what respect the substantial rights of the defendant would be prejudiced by the denial of the motion. Ind. Code § 35-4.1-1-6 (Supp.1979). The predecessor statute specifically vested the trial court with the discretion to decide whether to allow a defendant to withdraw a plea of not guilty. *Id.* The language of the revised statute seems to allow a defendant to withdraw a plea at any time and thus, by implication, eliminate the trial court's discretion to deny the motion.

The State argues that subsection 4(a) should be read with reference to subsection 4(b). Subsection 4(b) deals with the period after an entry of plea has been made, but before sentence has been issued, and permits a court to allow a defendant to withdraw a plea of not guilty. Subsection (b) also provides that the court's ruling on the motion is reviewable only for an abuse of discretion. Ind.Code § 35-35-1-4(b). The State argues that two statutes covering the same subject matter should be construed together. Because the abuse of discretion standard is available in subsection 4(b), it should apply to subsection 4(a) as well. *State ex rel. Board of Tax Commissioners v. Daviess Circuit Ct.,* 249 Ind. 580, 230 N.E.2d 761 (1967). When both sections of the statute are read in harmony, the court has the discretion to deny Douglas' plea. We agree with this construction.

The trial court did not abuse its discretion in denying Douglas' request, though we think the reason stated for doing so was not the strongest one apparent. The trial court stated that it was denying Douglas' request because it might not be possible to establish a factual basis for the guilty plea given his bizarre behavior before trial. This seems a bit off the mark. At the time when the court denied Douglas' motion to plead, there was ample evidence in the record to establish a factual basis. On the other hand, the trial court could quite reasonably have been concerned that the request was just another ruse, one aimed at challenging the conviction later on grounds that the plea was made involuntarily or unknowingly.

Finally, counsel does not suggest any way in which Douglas suffered any disadvantage from the court's denial of his request to plead guilty. Had he pled guilty to murder, Douglas would have ended up in the same place he now stands—convicted of murder. In short, we think it was not error to refuse the request to plead guilty.

## III. Conclusion

We affirm the judgment of the trial court.

DeBRULER, DICKSON, SULLIVAN and SELBY, JJ., concur.

---

counsel in *Burris* said of his client, "We've got a street person defendant ... He's not the best I've ever had ... I don't even like him. He and I have had several arguments." *Id.* at 1073. Despite these negative comments, the court there found that the evidence was such that counsel's comments did not prejudice the jury regarding the defendant's guilt.