Lawrence THOMAS, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 46A04–0306–PC–295.

Court of Appeals of Indiana.

Feb. 27, 2004.

Transfer Granted May 28, 2004.

Susan K. Carpenter, Public Defender of Indiana, Mario Joven, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Petitioner Lawrence Thomas ("Thomas") appeals the denial of his petition for post-conviction relief. We reverse and remand.

### Issue

Thomas raises five issues, the following one of which we find dispositive: Whether he received ineffective assistance of trial counsel when counsel failed to object to a jury instruction on felony murder, which did not delineate the elements of the underlying felony, i.e., dealing in cocaine.[1]

---

1. Thomas raises the following four issues, which we do not address:

    I. Whether the trial court's failure to instruct the jury on the elements of felony murder or the underlying felony of dealing in cocaine constituted fundamental error;

    II. Whether the jury's verdict was unclear;

    III. Whether Thomas received ineffective assistance of appellate counsel; and

    IV. Whether "[t]he evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court."

    Appellant's Br. at 2. Initially, we observe that Thomas's claims of fundamental error—i.e., the trial court's proffer of the erroneous Felo-

### Facts and Procedural History

In Thomas's direct appeal, we summarized the underlying facts as follows:

On February 22, 1993, between 4:00 p.m. and 5:00 p.m., Shelton Byrd drove to the home of [Thomas.] Before getting into Byrd's car, Thomas retrieved two bags, one containing crack cocaine, and the other containing soap made to look like crack cocaine. Thomas gave the bag containing crack cocaine to Darren Sherrod. The group then drove in search of a prostitute, and shortly thereafter, picked up Onetha Lemons. Byrd, Thomas, and Lemons dropped off Sherrod and proceeded to Byrd's home.

At Byrd's home, Thomas and Lemons went upstairs to negotiate for sex. When an agreement could not be reached between Thomas and Lemons, they returned to the downstairs, and Byrd, Thomas and Lemons left the house. Shortly thereafter, Byrd dropped off Lemons.

Once Thomas and Byrd were alone, Thomas asked for his crack cocaine. Byrd responded that he did not have it. Thomas became upset and demanded that either his cocaine be returned or that Byrd compensate Thomas for the missing cocaine. The argument continued, and Byrd ordered Thomas out of the car. Thomas then pulled out a gun and fatally shot Byrd in the head.

On February 28, 1993, Thomas surrendered himself to the police. At the police station, Thomas attempted to talk with the police officers about the incident; however, the officers repeatedly told Thomas that they could not talk with him without his mother being present. Thomas was later joined at the police station by his mother, Ella Frye. Upon arriving at the station, Frye spoke with Lieutenant Jesse and was advised of the murder investigation and the suspected involvement of her son. Frye was then shown to a squad room where she and Lieutenant Jesse talked in private. The Lieutenant asked Frye if he could talk with Thomas about the incident. Frye agreed, and, shortly thereafter, Thomas and his mother were placed in a larger squad room where they were joined by police officers.

Lieutenant Jesse read the standard waiver form and advised Thomas and Frye of Thomas' constitutional rights. Thomas and Frye initialed and signed the waiver of rights form. They also stated that they were given an opportunity to discuss the matter in private. . . .

After giving an informal statement, Thomas was asked by the police officers if he wanted to give a formal videotaped statement. Prior to the taping, however, Thomas and his mother were again advised of Thomas' constitutional rights, and the two were given another opportunity to consult with each other in private. Approximately five minutes later, Thomas and his mother called the officers back into the room and executed the waiver of rights form. Thomas then gave the police a videotaped statement confessing to the murder. Thomas'

---

ny Murder Instruction, which failed to specify the elements of the underlying felony of dealing in cocaine—and unclear verdict are not available in post-conviction proceedings because they do not reveal deprivation of the right to effective counsel, nor were they demonstrably unavailable at the time of the direct appeal. *See, e.g., Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). Because the above claims of error may not survive as freestanding issues, we decline to review them as such. *See, e.g., Davis v. State,* 775 N.E.2d 1182, 1186 (Ind.Ct.App.2002), *trans. denied.* Moreover, because of our disposition of the ineffective assistance of trial counsel claim, we do not address Thomas's other claims of error.

mother remained with him throughout the interview.

*Thomas v. State*, No. 46A05–9407–CR–272, slip op. at 2–3, 659 N.E.2d 266 (Ind.Ct. App. December 22, 1995) (internal citations omitted).

In an amended information, the State charged Thomas with felony murder,[2] alleging that Thomas killed Byrd while dealing in cocaine or a narcotic drug in violation of Indiana Code Section 35–48–4–1. At a jury trial, the trial court gave the jury Final Instruction Number 2 ("Felony Murder Instruction"), which provides that:

### FINAL INSTRUCTION NO. 2

The statute defining the offense of Murder, which was in force at the time of the offense charged reads (in part) as follows:

35–42–1–1(3)

A person who: knowingly or intentionally kills another human being; while committing or attempting to commit: (A) dealing in cocaine or a narcotic drug (Ind. code 35–48–4–1), commits murder, a felony.

R. at 27.[3]

At the conclusion of the trial, the jury found Thomas guilty of felony murder and the trial court sentenced him to the presumptive sentence of forty years. *Thomas*, slip op. at 4. On direct appeal, Thomas argued that: (1) his confession was improperly admitted into evidence; (2) the evidence was insufficient to support his felony-murder conviction; (3) he was denied his constitutional right to be present at all stages of trial when the trial court allowed the jury to view his videotaped confession outside of his presence; and (4) his forty-year sentence was manifestly unreasonable. *Id.* slip op. at 2. Another panel of this court decided against Thomas on all issues. *Id.*

On February 5, 1998, Thomas filed a Petition for Post Conviction Relief and amended the petition on June 7, 1999. To support his petition for post-conviction relief, Thomas argued, in part, that the trial court committed fundamental error by failing to properly instruct the jury on the essential elements of the underlying felony supporting his felony murder conviction and, in addition, that he received ineffective assistance of trial and appellate counsel. On July 30, 2002, the post-conviction court denied Thomas's petition for post-conviction relief. On April 28, 2003, the post-conviction court entered its findings of fact and conclusions thereon denying Thomas any post-conviction relief. Thomas now appeals the denial of his petition for post-conviction relief.

### Discussion and Decision

#### I. Standard of Review

Post-conviction procedures do not afford defendants the opportunity for a "super-appeal." *Benefiel v. State*, 716 N.E.2d 906, 911 (Ind.1999), *cert. denied*, 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). Rather, they are "special, quasi-civil remedies whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal." *Berry v. State*, 483 N.E.2d 1369, 1373 (Ind.1985) The petitioner bears the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993). As such, a petitioner who has been denied post-conviction relief faces a rigorous standard of review. *Benefiel*, 716 N.E.2d at 912. To prevail on appeal, the petitioner must demonstrate that the evidence as a

---

2. Ind.Code § 35–42–1–1(3).

3. The trial court also gave the Felony Murder Instruction as Preliminary Instruction No. 5.

whole "leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Prowell v. State*, 741 N.E.2d 704, 708 (Ind.2001). Stated differently, we will disturb a post-conviction court's decision only where the evidence is uncontradicted and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Miller v. State*, 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied*, 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000).

■ Upon reviewing a petition for post-conviction relief, we may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court, i.e., the sole judge of the evidence and the credibility of the witnesses. *Blunt–Keene v. State*, 708 N.E.2d 17, 19 (Ind.Ct.App.1999). Moreover, our supreme court recently emphasized that [i]n post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). With this law as our guide, we now review Thomas's claim of error.

## II. Analysis

■ On appeal, Thomas contends that he received ineffective assistance of trial counsel because counsel failed to object to the Felony Murder Instruction and tender an instruction delineating the elements of the offense of dealing in cocaine, i.e., the underlying felony offense supporting the felony murder charge. Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On appeal, we evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland.*

*Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind.1999) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; see also *Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind.1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind.1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.*

Moreover, under the *Strickland* test, counsel's performance is presumed effective. *Douglas*, 663 N.E.2d at 1154. A petitioner must present convincing evidence to overcome the strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052; *Broome v. State*, 694 N.E.2d 280, 281 (Ind.1998).

■ In the present case, Thomas claims that he was denied effective assistance of trial counsel because counsel failed to object to the Felony Murder Instruction and to tender an instruction that delineates the elements of dealing in cocaine. Before we address Thomas's specific claim of error, we observe that the amended charging

information against Thomas provided that, on February 23, 1993, Thomas knowingly or intentionally killed Byrd while dealing in cocaine or a narcotic drug, pursuant to Indiana Code Section 35–42–1–1(3). Indiana Code Section 35–42–1–1 provides, in relevant part, as follows:

A person who:

(1) knowingly or intentionally kills another human being; [or]

* * * * *

(3) kills another human being while committing or attempting to commit:

(A) dealing in or manufacturing cocaine, a narcotic drug, or methamphetamine (IC 35–48–4–1);

* * * * *

commits murder, a felony.

Accordingly, the crime of felony murder, pursuant to Indiana Code Section 35–42–1–1(3), does not require a mens rea of knowingly or intentionally. Rather, it merely requires the State to prove that a person killed another human being while committing or attempting to commit the felony offense of dealing in cocaine.

Nevertheless, here, Thomas was charged with and tried for the felony murder of Byrd. The record reveals that, at the conclusion of Thomas's murder trial, the trial court read its final instructions to the jury, including the Felony Murder Instruction, which provides that:

. The statute defining the offense of Murder, which was in force at the time of the offense charged reads (in part) as follows:

35–42–1–1(3)

A person who: knowingly or intentionally kills another human being; while committing or attempting to commit: (A) dealing in cocaine or a narcotic

drug (Ind.Code 35–48–4–1), commits murder, a felony.

R. at 27. Apart from this Felony Murder Instruction, none of the other instructions, given by the trial court to the jury, reference the offense of dealing in cocaine.

■ In general, to succeed on a claim that trial counsel was ineffective for failing to make an objection, the defendant must demonstrate that if such an objection had been made, the trial court would have had no choice but to sustain it. *Sanchez v. State,* 675 N.E.2d 306, 310 (Ind.1996). Further, our supreme court has held that it is fundamental error for the trial court to fail to give an instruction setting forth all the elements of the offense. *Lacy v. State,* 438 N.E.2d 968, 971 (Ind.1982).

Here, to convict Thomas for the felony murder of Byrd, the State had to prove that Thomas killed Byrd while committing or attempting to commit the crime of dealing in cocaine. The crime of dealing in cocaine, as a Class B felony offense, is outlined in Indiana Code Section 35–48–4–1, which provides, in relevant part, that:

(a) A person who:

(1) knowingly or intentionally:

(A) manufactures;

(B) finances the manufacture of;

(C) delivers; or

(D) finances the delivery of;

cocaine, a narcotic drug, or methamphetamine, pure or adulterated, classified in schedule I or II; or

(2) possesses, with intent to:

(A) manufacture;

(B) finance the manufacture of;

(C) deliver; or

(D) finance the delivery of;

cocaine, a narcotic drug, or methamphetamine, pure or adulterated, classified in schedule I or II;

commits dealing in cocaine, a narcotic drug, or methamphetamine, a Class B felony, except as provided in subsection (b).

Because neither the Felony Murder Instruction nor the trial court's instructions as a whole delineated the elements of the underlying felony of dealing in cocaine, it was unreasonable for trial counsel not to object to the instructions and tender an instruction describing the elements of dealing in cocaine.[4] Indeed, had Thomas's trial counsel objected to the Felony Murder Instruction as presented, the trial court would have had to sustain it, because the underlying elements of dealing in cocaine were not present in the instructions and, therefore, the alternative would have been fundamental error. Accordingly, there is a reasonable probability that had trial counsel objected to the Felony Murder Instruction and tendered an instruction demarcating the elements of dealing in cocaine, the jury's verdict would have been different, i.e., the jury could have concluded, for example, that one of the dealing in cocaine elements was not met. Without an instruction that outlines the elements of dealing in cocaine, the jury was clearly impeded in its ability to determine whether Thomas committed or attempted to commit the underlying felony, an essential element of felony murder. As such, Thomas was prejudiced by trial counsel's deficient performance. Thus, the post-conviction court erred by concluding that Thomas did not receive ineffective assistance of trial counsel and by not granting Thomas's petition for post-conviction relief.

For the foregoing reasons, we reverse the post-conviction court's denial of Thomas's petition for post-conviction relief and remand for proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J., and DARDEN, J., concur.

---

4. The record is devoid of any evidence that Thomas's trial counsel tendered a proposed jury instruction regarding the elements of dealing in cocaine. Moreover, at the post-conviction hearing, Thomas's trial counsel "vaguely" recalled his trial strategy as follows:

Q: Do you recall what your strategy was as far as the defense of [Thomas?]

A: Vaguely. I thought there was an insufficiency of proof as far as the underlying felony was concerned.

\* \* \* \* \*

Q: If the court's instructions did not define the offense of felony murder with a specific definition of the elements of the offense of dealing in cocaine, can you think of any reason why you would or would not have submitted instructions on the elements of dealing in cocaine?

A: I always had a problem with the fact that that was the underlying felony. And I know there's—there was a part in the record where the Judge didn't even know what was the actual cocaine deal; if [Thomas] gave it to the first guy or the second guy or whatever. And my suspicion is now, trying to think back then, is if I would have submitted an instruction with the elements of dealing in cocaine, I may have waived an argument or something as to the sufficiency of the 'cause my position the whole time was there was not an underlying felony here. So, I wasn't going to submit an instruction on it.

Post–Conviction Tr. at 6, 10–11. We note that if trial counsel were concerned about waiving an argument on appeal, he should have simply made an appropriate record before the trial court to preserve his contention.