## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 14 2015, 9:07 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Thaddeus L. Rodriguez
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thaddeus L. Rodriguez,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 14, 2015

Court of Appeals Case No.
64A03-1503-PC-92

Appeal from the Porter Superior Court

The Honorable Raymond D. Kickbush, Senior Judge

Trial Court Cause No.
64D05-0912-PC-12989

**Bailey, Judge.**

# Case Summary

Pro-se Appellant-Petitioner Thaddeus L. Rodriquez ("Rodriquez") appeals the denial of his petition for post-conviction relief, following his convictions for Burglary, as a Class B felony,[1] and Resisting Law Enforcement, as a Class A misdemeanor,[2] and his adjudication as a habitual offender.[3] We affirm.

# Issues

Rodriquez presents six issues for review, which we consolidate as the following three issues:

     I.      Whether error in the post-conviction proceedings deprived Rodriquez of procedural due process;

     II.     Whether Rodriquez was denied the effective assistance of trial counsel; and

     III.    Whether Rodriquez was denied the effective assistance of appellate counsel.

# Facts and Procedural History

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-44-3-3 [now I.C. § 35-44.1-3-1.]

[3] I.C. § 35-50-2-8.

[3]     The relevant facts were recited by a panel of this Court on direct appeal, as follows:

> During the early morning hours of January 28, 2008, Cydney Austin decided to spend the night at a friend's house in the same neighborhood where she lived in Portage. When Austin went to her house around 2:00 a.m. to pick up some items for the night, nothing was out of place. At some point after she left, someone broke into Austin's house and stole her son's stereo. When Austin learned of the burglary later that morning, she called police. Austin told police that at approximately 4:00 a.m., Rodriquez, an acquaintance who also lived in the neighborhood, called her cell phone and at the same time knocked on the door at the house where Austin was staying. Police tracked footprints in the snow from Austin's house to Rodriquez's house.
>
> Police knocked on Rodriquez's door and recognized Rodriquez as he looked out a window. When Rodriquez refused to open the door, the police sought a search warrant. . . .
>
> A search warrant was issued, and a SWAT team entered Rodriquez's house. Police could not find Rodriquez in the house but noticed a hole in the ceiling leading to the attic. Police eventually located Rodriquez hiding under a bed in the adjoining unit of the duplex, which he had accessed through the attic. Austin's son's stereo was recovered from Rodriquez's house.

*Rodriquez v. State*, 951 N.E.2d 313, slip op at 1-2 (Ind. Ct. App. Aug. 3, 2011).

[4]     On January 29, 2008, the State charged Rodriquez with Burglary and Resisting Law Enforcement. Subsequently, the State added a habitual offender allegation. A jury found Rodriquez guilty as charged, and also found him to be a habitual offender. He was sentenced to fifteen years for Burglary, enhanced

by twenty years due to his status as a habitual offender. He received a consecutive one-year sentence for Resisting Law Enforcement; thus, his aggregate sentence is thirty-six years.

[5] Rodriquez appealed, raising two issues: whether the factual basis supporting the search warrant was sufficient; and whether the trial court properly denied his request for a continuance. *Id.* at 1. Rodriquez's convictions were affirmed. *Id.* On November 12, 2009, Rodriquez filed a pro-se motion for post-conviction relief, alleging that he had been denied the effective assistance of trial and appellate counsel. On September 3, 2014, Rodriquez was permitted to amend his petition to add new allegations with respect to the performance of his trial and appellate counsel.

[6] During the pendency of the post-conviction claim, Rodriquez filed requests for the issuance of subpoenas. The post-conviction court conducted a hearing and issued some, but not all, of the requested subpoenas. The denials were accompanied by specific findings as to relevance.

[7] The post-conviction court conducted an evidentiary hearing on December 15, 2014. At that hearing, Rodriquez presented as witnesses his trial and appellate counsel. He then orally requested that the post-conviction court reduce his sentence. On February 20, 2015, the post-conviction court issued findings of fact and conclusions of law and an order denying Rodriquez post-conviction relief. He now appeals.

# Discussion and Decision

## *Standard of Review*

[8] The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## *Procedural Due Process*

[9] Rodriquez asserts he was deprived of adequate means to establish his claims of ineffective assistance of trial and appellate counsel. He claims that he was improperly denied a change of judge, the opportunity to amend his petition a second time, and a continuance of the evidentiary hearing. Additionally, Rodriquez contends that the post-conviction court improperly declined to issue subpoenas for necessary witnesses.

[10]     *Motion for Change of Judge.* Rodriquez claims that he was denied an impartial judge. Pursuant to Indiana Post-Conviction Rule 1(4)(b), a petitioner may request a change of judge "by filing an affidavit that the judge has a personal bias or prejudice against the petitioner" and stating "the facts and the reasons for the belief that such bias or prejudice exists." The post-conviction court is obliged to grant the motion only "if the historical facts recited in the affidavit support a rational inference of bias or prejudice." *Id.* On appeal, we presume that the judge is unbiased, and will overturn the denial of a motion for change of judge only upon a showing of clear error. *Azania v. State*, 778 N.E.2d 1253, 1261 (Ind. 2002).

[11]     Rodriquez's motion for change of judge, filed contemporaneously with his petition for post-conviction relief, was accompanied by an affidavit stating:

> On 4-16-08 I filed a complaint against Judge Harper and on 6-06-08 P.D. Dolores Aylesworth filed a Motion for Change of Judge and Recusal of Judge. Judge Harper denied the motion stating she could remain fair, impartial, and unbiased for the upcoming trial on 1-07-09. I did not receive a fair trail [sic] and Judge Harper denied every motion P.D. Aylesworth filed with the court throughout the proceedings. Judge Harper lied on her order revoking bond on 11-03, 2008 stating I had no stable living arrangements and limited ties to the community which I raised my daughter in Porter County and have 5 families living in Porter County. Also on 3-17-09 Judge Mary Harper stated I belong in prison. I had filed another complaint against Judge Harper on 5-04-09 due to the first complaint I did not receive a fair trial. And all the motions was denied that was filed with the court.

(App. at 45.) The alleged historical facts largely stem from trial rulings adverse to Rodriquez. However, such trial rulings are "not indicia of personal bias" in post-conviction proceedings. *Pruitt v. State*, 903 N.E.2d 899, 939 (Ind. 2009). Instead, a party "must show that the trial judge's action or demeanor crossed the barrier of impartiality and prejudiced" his case. *Flowers v. State*, 738 N.E.2d 1051, 1061 (Ind. 2000).

[12] The record discloses that, at the sentencing hearing in the underlying crimes, Judge Mary Harper discussed the aggravating and mitigating circumstances with respect to the crimes of which Rodriquez was convicted and his conduct while incarcerated awaiting trial and sentencing. She remarked, after observing that Rodriquez had convinced his daughter to contact a juror at home, "perhaps prison is exactly where he belongs." (Sent. Tr. at 38.) The trial judge was, at that time, engaged in the evaluative process before pronouncing sentence upon Rodriquez. Her statement, derived from an evaluation of the evidence and circumstances before her, does not indicate personal bias.

[13] Nonetheless, Rodriquez actually received a change of judge. Either in response to Rodriquez's motion or other circumstances, at some point Senior Judge Raymond Kickbush was appointed to preside in the instant matter. Thus, the trial judge whose impartiality was challenged by Rodriquez did not conduct the post-conviction evidentiary hearing or issue the post-conviction order denying Rodriquez relief. He has not demonstrated that he was denied an impartial post-conviction judge.

[14]     *Motion for a Continuance.* When Rodriquez and the State appeared for the post-conviction hearing, Rodriquez advised the court that he had subpoenaed two witnesses to appear, his trial counsel (Dolores Aylesworth) and his appellate counsel (Bryan Truitt). Appellate counsel was present at that time; trial counsel was not. Rodriquez requested a continuance to procure his trial counsel's attendance. Instead, the post-conviction court called for a brief recess and instructed court staff to contact Aylesworth. Aylesworth appeared within the hour and testified. Accordingly, Rodriquez was able to elicit testimony from both his witnesses and cannot claim that he was denied due process in this regard.

[15]     *Denial of Subpoenas for other Witnesses.* Rodriquez claims that he was denied subpoenas for necessary witnesses. When determining whether to issue subpoenas, the post-conviction court has broad discretion, and we will reverse its decision only for an abuse of that discretion. *Johnson v. State*, 832 N.E.2d 985, 994 (Ind. Ct. App. 2005), *trans. denied.* "An abuse of discretion has occurred if the court's decision is against the logic and effect of the facts and circumstances before the court." *Id.*

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

Ind. Post-Conviction Rule 1(9)(b).

[16] The post-conviction court authorized the issuance of four subpoenas at Rodriquez's request. During the months of July and August of 2014, Rodriquez filed motions to subpoena eleven additional witnesses: Cydney Austin, Emerito Beltran, Flora Akers, Dennis Wilkins, Kathy Gralik, Joseph Berlanga, Deidre Eltzroth, Gregory Coleman, Donald Early, Aaron Chinn, and Trista Hudson. On August 5, 2014, these requests were denied "unless and until Petitioner demonstrates to the Court the reason sought and its applicability to his Petition for Post-Conviction Relief." (App. at 111.)

[17] On September 3, 2014, a hearing was conducted on Rodriquez's motion to amend his post-conviction petition. At that hearing, Rodriquez filed with the court several affidavits in support of his requests for the issuance of subpoenas. Argument was heard on the motion to amend and the requests for subpoenas; the post-conviction court then requested memoranda from the parties.[4]

[18] Rodriquez subsequently filed his memorandum in support of his requests for the issuance of subpoenas. In relevant part, Rodriquez claimed that victim Cydney Austin would confirm the fact that police falsified the probable cause affidavit; Officer Flora Akers would confirm that she falsified the probable cause affidavit and perjured herself during trial; Officer Dennis Wilkins would

---

[4] For unknown reasons, we do not have a transcript of this hearing. However, the post-conviction court's order of October 1, 2014 stated that these events took place.

confirm his lack of personal knowledge of Rodriquez's criminal history; Joseph Berlanga would testify that he never made statements attributed to him by investigating officers; Juror Kathy Gralik would testify that she failed to disclose a personal relationship with a prosecutorial staffer; Officer Aaron Chinn would confirm the falsification of the probable cause affidavit; Officer Emerito Beltran would confirm acts of perjury and falsification of facts in the probable cause affidavit; Prosecutor Trista Hudson would confirm falsification of the probable cause affidavit and admit that she suborned perjury; Donald Early would testify that Cydney Austin gave Rodriquez the stereo; and Public Defender Deidre Eltzroth would confirm that Donald Early had stated that Cydney Austin gave Rodriquez the stereo.

[19] On October 1, 2014, the post-conviction court issued an order of denial. The court observed that Rodriquez was attempting to re-litigate issues decided adverse to him at trial and to challenge the credibility of the witnesses. Ultimately, the court concluded: "Petitioner's conclusory assertions fail to meet the legal standard set forth in PC Rule 1 Section 8." (App. at 179.)

[20] We agree with the post-conviction court's assessment: Rodriquez's bald assertions did not comply with the specificity requirement of our post-conviction rules. Post-conviction proceedings are not designed to permit attacks upon trial witness credibility, but rather to address issues demonstrably unavailable at trial and on direct appeal. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). Rodriquez's summaries of anticipated testimony did not reflect relevant and probative testimony regarding issues demonstrably unavailable at

trial and on direct appeal. Nor was the court required to assist Rodriquez in pursuing potential and speculative challenges to the credibility of trial witnesses. Succinctly, Rodriquez may not use the post-conviction process to get a second bite at the apple. We find no abuse of the post-conviction court's discretion.

[21] *Second Motion to Amend Post-Conviction Petition.* Post-Conviction Rule 1(4)(c) provides in relevant part:

> The petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial. Any later amendment of the petition shall be by leave of the court.

On September 3, 2014, Rodriquez was granted leave to amend his first petition for post-conviction relief. A hearing date was set for December 12, 2014. On October 27, 2014, Rodriquez sought leave to file a second amended petition to add allegations with respect to the habitual offender allegation and prosecutorial misconduct. More specifically, Rodriquez alleged that the trial court had "abused its discretion when it permitted the state to file a late habitual offender request," and had done so "despite trial counsel's objections that it was not timely filed." (App. at 98, 101.) Rodriquez further alleged that the prosecutor had committed misconduct by using perjured affidavits and suborning perjury.

[22] Because the motion for leave to file a second amendment was filed within sixty days of the hearing date of December 12, 2014, it was within the discretion of

the post-conviction court to grant or deny the motion. *See Tapia v. State*, 753 N.E.2d 581, 586 n.7 (Ind. 2001) (observing that the post-conviction court has discretion when ruling on amendments within the 60-day period). Rodriquez argues that the post-conviction court should have permitted his second amendment because "the proposed amendments were not drastically different than the issues presented in Rodriquez's previous petitions" and his penal facility had been on lock-down. (Appellant's Br. at 27.) However, we observe that Rodriquez attempted to add free-standing allegations of trial error.

[23] The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). As we have previously stated, the purpose of a petition for post-conviction relief is to provide petitioners the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007). Moreover, collateral challenges to convictions must be based upon grounds enumerated in the post-conviction rules. *Shanabarger v. State*, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006), *trans. denied*; *see also* P-C. R. 1(1). To the extent that Rodriquez attempted to raise free-standing issues of trial court error and prosecutorial misconduct in a second amended petition, they were not proper issues to be addressed through post-conviction relief. *Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind. 2002). The post-conviction court did not abuse its discretion by denying Rodriquez leave to file his proffered second amended petition.

## *Effectiveness of Trial Counsel*

[24] Rodriquez contends he was denied the effective assistance of trial counsel in two respects: trial counsel (1) did not challenge the veracity of the statements in the probable cause affidavit and (2) did not obtain a continuance to facilitate the testimony of two defense witnesses, Donald Early and Justine Rodriquez. Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland. Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.*

[25] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[26] In his amended petition for post-conviction relief, Rodriquez claimed that trial counsel was ineffective for: (1) her failure to seek a continuance so that Donald Early and Justine Rodriquez (Rodriquez's daughter) could testify; and (2) her failure to suppress evidence obtained in the execution of a search warrant by showing (a) the facts in the probable cause affidavit were not supported by oath or affirmation, and (b) the probable cause affidavit contained knowingly false information.

[27] *Probable Cause Affidavit.* The affidavit supporting the search warrant provided in part:

> On January 28, 2008, the Portage Police Department investigated a complaint of burglary involving Thaddeus

Rodriquez. On January 28, 2008, this officer received a report, reference a complaint of burglary at 3290 Ashland Avenue, Portage, Indiana, wherein the suspect Thaddeus Rodriquez, left shoeprints with the heel portion having a broken chevron pattern where the point of the chevron points toward the toe. The toe portion has a pattern from the tip of the toe that angles down at a 45 degree angle, and the lower portion has a tread bar that crosses horizontally across the sole. Officer followed the shoe prints [to] 5334 Boulder. Portage PD records indicate that this is the residence of Thaddeus Rodriquez and that Officer Greg Coleman of the Portage Police Department made visual contact with a Hispanic male subject. The victim Cydney L. Austin … stats [sic] that at approximately 0400 hrs on today's date she received a telephone call from Thaddeus Rodriquez. Ms. Austin stated she was at 3276 Brown St. when she received the call from Mr. Rodriquez. Ms. Austin advised that she looked out the window at the time of the call and observed Mr. Rodriquez standing outside the Brown St. residence talking to her on a cell phone. Mr. Rodriquez would have knowledge that Ms. Austin was not at her residence at 3290 Ashland Ave. Upon investigation it was determined that Thaddeus Rodriquez had damaged real property owned by Cydney Austin, entered the property at 3290 Ashland, and committed a burglary, to wit: entered the property at 3290 Ashland, and took a SONY MHC-GX99 stereo.

(Ex. 14). At Rodriquez's trial, Austin provided testimony that contradicted the affidavit in one respect. Austin testified that she had not looked outside to see Rodriquez talking on a cell phone. Rather, Austin clarified that her friend Alan Tressler answered the door and Austin, who was on the sofa, was able to hear and recognize Rodriquez's voice from that vantage point. In Rodriquez's view, this renders the probable cause affidavit demonstrably false and his trial

attorney, Delores Aylesworth, should have sought suppression of evidence gained through the search warrant on these grounds.

[28]     Prior to Rodriquez's trial, Aylesworth had filed a motion to suppress evidence of the stereo, arguing that the search warrant was not supported by probable cause. The motion to suppress was unsuccessful. She renewed her suppression objection at trial, thereby preserving the issue for review. Appellate counsel then raised an issue claiming that the factual basis supporting the search warrant was insufficient. This Court, "focusing on reasonable inferences drawn from the affidavit," concluded that "the magistrate had a substantial basis for concluding that evidence of a crime would be found at Rodriquez's house." *Rodriquez*, slip op. at 3.

[29]     Aylesworth testified at the post-conviction hearing. She explained that she did not challenge the probable cause affidavit as deficient on technical grounds, because it was in fact submitted upon oath or affirmation. She testified that she had "no ability to judge" whether facts in the probable cause affidavit were true or false. (P.C. Tr. at 40). She acknowledged that she had attacked the probable cause affidavit on other grounds, albeit without success.

[30]     The post-conviction court concluded that Aylesworth's performance was not deficient. We agree. Aylesworth made a strategic decision to challenge the evidence obtained in the execution of the search warrant by claiming that the probable cause affidavit was factually insufficient. As previously observed, counsel is afforded considerable discretion in the choice of strategy and tactics.

*Timberlake*, 753 N.E.2d at 603. Aylesworth's lack of opposition to the search warrant on grounds that it was procured by perjury is clearly within the range of professional norms – particularly so in light of the single discrepancy explained at trial and the lack of evidence of nefarious motivation of the affiant.

[31] *Continuance to Procure Attendance of Omitted Witnesses.* Trial counsel had included Donald Early and Justine Rodriquez on her witness list, and Early had been subpoenaed. However, neither Early nor Justine testified in Rodriquez's defense, and trial counsel did not request a continuance. The substance of Justine's anticipated testimony is unknown. However, it appears that Rodriquez expected Early to testify in support of a claim that Austin had given the stereo to Rodriquez as collateral for a loan.

[32] The decision not to seek a continuance is the type of strategic choice that is within the province of counsel. *Miller v. State*, 702 N.E.2d 1053, 1060 (Ind. 1998). Trial counsel's efforts and strategy, although they did not ultimately achieve the result desired by Rodriquez, were not so unreasonable as to constitute ineffective assistance of counsel. *See Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied.*

## Effectiveness of Appellate Counsel

[33] A defendant is entitled to the effective assistance of appellate counsel. *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002). The two-pronged standard for evaluating the assistance of trial counsel first enunciated in *Strickland* is applicable to appellate counsel ineffective assistance claims. *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997). There are three basic categories of alleged appellate ineffectiveness: (1) denying access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Id.* at 193-95. Here, the second category is implicated, as Rodriquez claims that his appellate counsel should have challenged his aggregate thirty-six year sentence as inappropriate.

[34] "To show that counsel was ineffective for failing to raise an issue on appeal thus resulting in waiver for collateral review, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential." *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008). Upon review, the performance prong is evaluated by applying the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than those raised. *Id.*

[35] Upon conviction of a Class B felony, Rodriquez faced a sentencing range of between six and twenty years, with ten years as the advisory term. I.C. § 35-50-2-5. Due to Rodriquez's status as a habitual offender, that sentence could be enhanced by up to thirty years. I.C. § 35-50-2-8. Upon conviction of a Class A misdemeanor, Rodriquez faced a potential sentence of one year. I.C. § 35-50-2-

7. Accordingly, Rodriquez could have received a maximum aggregate sentence of fifty-one years. He received an aggregate sentence of twenty-six years.

[36] An appellant may challenge the appropriateness of his sentence. The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of such review is to attempt to leaven the outliers. *Id.* at 1225. A defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

[37] At the post-conviction hearing, appellate counsel testified that he did not consider a sentencing challenge to be a "legitimate sentencing issue" given Rodriquez's significant criminal record and the fact that he received an aggregate sentence of much less than his potential exposure. (P.C. Tr. at 18.) The criminal history to which appellate counsel referred includes over 70 prior adult misdemeanor convictions and two prior felony convictions. Rodriquez had a history of juvenile adjudications beginning at age eleven. At the time of

sentencing in this case, he had eight pending charges in the State of Indiana and seven active warrants in the State of New Mexico. He had been released on bond only ten days before committing the instant burglary. We conclude that appellate counsel did not overlook a significant and obvious issue stronger than those raised.

# Conclusion

[38] Rodriquez was not denied due process in the post-conviction proceedings. He was not denied the effective assistance of trial or appellate counsel.

[39] Affirmed.

Vaidik, C.J., and Crone, J., concur.