John AUTREY, Jr., Appellant
(Defendant)

v.

STATE of Indiana, Appellee (Plaintiff).

No. 71S00–9612–CR–761.

Supreme Court of Indiana.

Oct. 28, 1998.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for appellee.

SELBY, Justice.

John Autrey, Jr. was convicted of murder and sentenced to a term of fifty-five (55) years.[1] The only issue raised on appeal is whether defendant's right to effective assistance of counsel under the Sixth Amendment of the United States Constitution was violated when trial counsel failed to tender instructions on the lesser included offenses of murder. We conclude that this failure was an intentional and permissible tactical decision by trial counsel and does not constitute ineffective assistance of counsel. We affirm the trial court.

## FACTUAL BACKGROUND

The events at issue in this case took place on September 9, 1995. The defendant was at the house of Josephine Flores, drinking beer and smoking "weed" with Reynaldo Torres, Angel Torres, Richard Mesaros, Jose Lugo, David Frohwerk, and Shannon Lyttle. Reynaldo and Frohwerk confronted Matthew Blankenship and his younger brother Brian who had just made a phone call from the corner phone booth. A dispute arose regarding Matthew's cigarettes, and Reynaldo punched Matthew several times. Matthew and Brian returned to their father's residence, while Frohwerk and Reynaldo returned to the Flores' residence.

About ten minutes later, Matthew and his father James approached the Flores' residence. James was holding a baseball bat and yelling. Some witnesses heard James yell racial slurs and others did not. Lyttle approached the Blankenships, followed by Frohwerk and defendant. A scuffle ensued in which Lyttle obtained the bat, Frohwerk fought with Matthew, and someone threw a bottle and brick at James. Eventually James was knocked to the ground, at which time he was kicked, beaten with a bat, and may have been struck with the cement brick. The witnesses provide widely disparate accounts of this scuffle.

Flores, Mesaros, Lugo, Ridel, and defendant testified that defendant threw the bottle. The neighbor Gonzales testified that someone other than defendant threw the bottle. Angel testified that the bottle hit James

---

1. The murder conviction resulted from defendant's conduct with James Blankenship. Defendant also was convicted of Battery, a class C felony. This charge resulted from defendant's fight with Matthew Blankenship. However, the judge at sentencing entered a sentence for the murder charge only.

square in the face. Frohwerk saw the bottle skim James only. Matthew, Mesaros, Ridel, Lugo, and defendant testified that the bottle missed James. Gonzales testified that defendant hit James directly in the face with the bottle.

Flores saw defendant throw the brick. Matthew saw the brick hit his father in the chest. Gonzales saw the brick dropped on top of James while James was on the ground, but did not see it hit James, because his view was obstructed by the car. Lugo saw the brick skim the face of James. Flores, Mesaros, Lugo, Frohwerk, and defendant saw Lyttle strike James with the bat while James was lying on the ground. Frohwerk, Ridel, and defendant testified that while James was on the ground, defendant was fighting with Matthew.

After the scuffle, Frohwerk, Lyttle, Mesaros, and defendant left the scene. Defendant took the bat, left on a bicycle, and threw the bat in a nearby creek. Defendant's clothes were blood-stained. Tests later established that this blood matched the blood of James, but was not the blood of defendant, Lyttle, or Frohwerk. Defendant testified that the blood came from the bat, which he at no time used to hit James. Commander Trennery of the special crimes unit which had investigated these events stated that the blood on defendant's clothing was a swipe, which he described as blood transferred from a cylindrical object onto defendant's clothing.

The autopsy determined that James died from blunt trauma wounds to the head. The autopsy and Dr. Hoover's autopsy report and testimony established that either a bottle, cement block, bat, or kicking could have caused each wound. For each wound, the doctor gave an opinion as to the type of object most likely to have caused the injury. Any of the head injuries above could have caused James's death.

## DISCUSSION

Defendant argues that trial counsel's failure to tender any lesser included offense instructions amounted to ineffective assistance of counsel. To prevail on such a claim, a defendant must show both that counsel's performance was deficient and that this defi-

cient performance prejudiced defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). When we analyze deficiency of performance, we start with the presumption that counsel's performance was effective. *Potter v. State,* 684 N.E.2d 1127, 1131 (Ind.1997). The defendant may rebut this presumption only by strong and convincing evidence. *Id.* Effectiveness is measured using "an objective standard of reasonableness under prevailing professional norms." *Smith v. State,* 689 N.E.2d 1238, 1243 (Ind.1997).

After careful consideration of the record, we find that counsel acted effectively. The record contains numerous indications that trial counsel made the decision not to tender lesser included offenses as part of an "all or nothing" trial strategy. It is well-established that trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. *Garrett v. State,* 602 N.E.2d 139, 142 (Ind.1992). This is so even when "such choices may be subject to criticism or the choice ultimately prove detrimental to the defendant." *Id.*

Further, this Court has previously held that a tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense. *Page v. State,* 615 N.E.2d 894, 895 (Ind.1993). In *Page,* we concluded: "It is not sound policy for this Court to second-guess an attorney through the distortions of hindsight." *Id.* at 896. There is no reason to stray from this policy.

The all or nothing strategy employed by counsel was appropriate and reasonable based on the facts in this case. Through cross-examination of state witnesses, testimony of defense witnesses, and closing arguments, counsel attempted to establish a foundation for the potential acquittal of his client. The witnesses' testimony was so discordant that by the end of this trial a reasonable juror could have concluded that James was not struck by the bottle or the cement block, that the defendant never used the bat, and

that the blood on defendant's clothes came from the bat alone. A reasonable juror could have decided either that Lyttle was the sole cause of James' injuries, or that Lyttle provided the death blow when he beat James with the bat. Recognizing this, trial counsel in closing argument attempted to convince the jury that Shannon Lyttle and Shannon alone caused James' death. This defense strategy is evidenced by such statements as: "Shannon had the bat. The bat caused the death." (R. at 604.); and "Shannon is just standing there banging [James] with the bat. You know, let's not overlook the fact that Shannon killed him." (R. at 605.) The fact that the jury found the defendant guilty does not make this strategy deficient. This was an instance where the guilt of defendant rested upon the credibility of the witnesses, which is the sole province of the jury. *Gant v. State*, 668 N.E.2d 254, 255 (Ind.1996).

Counsel's closing argument provides further evidence of the "all or nothing" strategy. Counsel argued that defendant "could have been charged with a lot of other things, but they choose not to. There is criminal recklessness. There is voluntary manslaughter, when you act in a sudden heat, passion. Those are things that might have fit this situation better than murder." (R. at 777.) It is apparent from this excerpt that counsel was aware that lesser included offenses might have been supported by the evidence. In this context, the decision not to tender lesser included offenses was a tactical decision, not an error.

While deciding this case under the first prong, we nonetheless find that defendant fails the second prong of the ineffective assistance of counsel claim, which requires defendant to show that counsel's deficient performance prejudiced him. The standard by which to measure prejudice was recently reiterated in *Games v. State*, 690 N.E.2d 211 (Ind.1997). In *Games*, this Court adopted the standard for prejudice as set forth by the United States Supreme Court in *Strickland* and *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). *Strickland* starts with the proposition that performance is prejudicial when "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Games*, 690 N.E.2d at 213 (quoting *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 698 (1984)). *Lockhart*, concerned that the application of this standard had become one of sheer outcome-determination, reframed the issue in terms of fairness and reliability. 506 U.S. at 370, 113 S.Ct. at 843, 122 L.E.2d at 189. This Court in *Games*, relying on these cases, held that the proper inquiry is whether counsel's errors were so serious that "the ultimate result was fundamentally unfair or unreliable." *Games*, 690 N.E.2d at 214 (quoting *Games v. State*, 684 N.E.2d 466, 469 (Ind.1997)).

Defendant's conviction was both fair and reliable. There was ample evidence at trial to support a murder conviction. A reasonable trier of fact could have found that defendant inflicted the death blow by any one of several instruments. Defendant himself admitted to involvement in the scuffle which ultimately killed James. The chaotic nature of mutli-party disputes often results in confusing and sometimes contradictory testimony. We leave it to the jury to ferret the truth out of this chaos. Indeed, defendant does not challenge the sufficiency of the evidence supporting his conviction. The jury found defendant guilty of murder beyond a reasonable doubt. Had the jury been instructed on lesser included offenses to murder, they would have been presented with the same evidence and heard the same testimony. Therefore, there is no reason to believe that the inclusion of lesser included offenses would have raised a reasonable doubt as to defendant's culpability for murder. The defendant has failed to prove that he was prejudiced by trial counsel's actions.

We affirm the order of the trial court.

SHEPARD, C.J., and SULLIVAN, and DICKSON, JJ., concur.

BOEHM, J., concurs in the conclusion that the first prong of an ineffective assistance of counsel claim was not established, but believes that, if a reckless homicide instruction

had been given, there was a reasonable probability of a conviction on that charge.