## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 07 2016, 10:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott King
Russell W. Brown, Jr.
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bronco Morgan,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

April 7, 2016

Court of Appeals Case No.
20A05-1508-PC-1159

Appeal from the Elkhart Circuit Court

The Honorable Terry Shewmaker, Judge

Trial Court Cause No.
20C01-0903-FA-3
20C01-1203-PC-27

**Bailey, Judge.**

# Case Summary

Appellant-Petitioner Bronco Morgan ("Morgan") challenged his conviction of Attempted Murder in a petition for post-conviction relief and also in a subsequent motion, on remand from this Court, to set aside the post-conviction order. He was denied relief and appeals those orders. We affirm.

# Issues

Morgan presents two issues for review:

I. Whether he was denied the effective assistance of trial counsel; and

II. Whether he established a claim of newly-discovered evidence. [1]

# Facts and Procedural History

The facts were recited by a panel of this Court on direct appeal as follows:

---

[1] Morgan articulates a third issue (incorporating his presumption that he established the credibility of a witness recantation), that is, whether his conviction was fundamentally unfair, having been obtained by perjured testimony. The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). The purpose of a petition for post-conviction relief is to provide petitioners the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007). Moreover, collateral challenges to convictions must be based upon grounds enumerated in the post-conviction rules. *Shanabarger v. State*, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006), *trans. denied*; *see also Indiana Post-Conviction Rule* 1(1). To the extent that Morgan attempted to raise a free-standing issue of trial error in the admission of evidence, this is not a proper issue to be addressed through post-conviction relief apart from his attempt to establish a claim of newly-discovered evidence. *Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind. 2002).

During the early morning hours of June 17, 2008, Morgan and his half-brother, Craig Smith ("Smith") were at a party at an apartment building in Elkhart. At some point, Morgan and Smith became involved in a physical altercation with a person called "Rat Boy." (Tr. 400.) Smith held "Rat Boy" against a wall so that Morgan could strike him. Afterwards, "Rat Boy" left but announced that he "would be back." (Tr. 401.) "Rat Boy" went into one of the nearby apartments and placed a call to his cousin, Varnell Dixon ("Dixon").

Dixon arrived shortly thereafter and confronted Smith. Dixon shoved Smith and Smith struck Dixon in the face. Dixon "pulled his hand back behind him" and "started shooting." (Tr. 339.) Smith was struck and killed by one of the bullets. Dixon fled.

Morgan rushed into an apartment which had a view of the street in front of the apartment building. Holding a gun, Morgan looked out the front window and said to Kevin Bush ("Bush"), "he must have went out the back." (Tr. 484.) Morgan ran to the fire escape and emptied his gun. Dixon collapsed on the ground next to his vehicle.

Morgan returned to Bush's apartment, handed Bush the gun, and directed him to dispose of it. Morgan told one of the party guests that he "got that m----- f-----" because "he killed his brother." (Tr. 405.)

Police officers responded to a 9-1-1 call reporting Smith's death. During the initial investigation, Officer Jason Ray stepped onto the fire escape and heard someone gasping for air. His attention was drawn to a nearby parking lot. Officer Ray shined his flashlight in the area and found Dixon lying on the pavement, bleeding from a gunshot wound to his head.

> Morgan was charged with Attempted Murder, and a jury found him guilty as charged. He was sentenced to fifty years imprisonment, with one year suspended to probation.

*Morgan v. State*, No. 20A04-1008-CR-577, slip op. at 2-3 (Ind. Ct. App. Mar. 25, 2011). On appeal, Morgan raised two issues, challenging the admission of evidence and his sentence. His conviction and sentence were affirmed. *See id.*

[4] On March 13, 2012, Morgan filed a pro-se petition for post-conviction relief. The petition was later amended with the assistance of counsel, to allege that Morgan had been denied the effective assistance of trial counsel and also had newly-discovered evidence. On October 21, 2013, following a hearing at which a recanting trial witness testified, the petition was denied. Morgan appealed.

[5] During the pendency of the appeal, Morgan filed a petition for remand. He asserted that he had obtained information that the recanting witness in his case had been involved in a separate murder investigation, she had recanted allegations, and the murder charge had been dismissed. Morgan was granted a dismissal without prejudice and a remand to have the opportunity to develop an evidentiary record in regard to the murder prosecution. On May 22, 2015, Morgan filed a motion for relief from judgment, attacking the denial of post-conviction relief. The post-conviction court conducted an evidentiary hearing and, on July 17, 2015, again denied Morgan post-conviction relief. This appeal ensued.

# Discussion and Decision

# Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

# Effectiveness of Trial Counsel

Morgan contends he was denied the effective assistance of trial counsel because counsel did not interview Michael Casey ("Casey") or present Casey's testimony at trial. Casey, a resident of the building where Dixon was shot, informally provided security there. He was one of fifty-eight potential witnesses listed by the State, and he had given a police statement.

Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims

of ineffective assistance under the two-part test announced in *Strickland*. *Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." *Id.*

[9]     We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve

the defendant's interests. *Id.* In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[10] "As a general proposition, the decision whether to call a particular witness is encompassed within the attorney's trial strategy." *Osborne v. State*, 481 N.E.2d 376, 380 (Ind. 1985). Absent a clear showing of injury and prejudice, an appellate court will not declare counsel ineffective for failure to call a witness. *Id.*

[11] Morgan claims that his trial counsel failed to identify, interview, and subpoena Casey, an "eyewitness to the crime." (Appellant's Br. at 6.) However, in his post-conviction testimony, Casey made no claim that he had seen the shooting of Dixon. Rather, he testified that he had seen a person other than Morgan run downstairs with a gun tucked up his sleeve; that he had not seen Morgan armed with a gun; and that he had heard no more shots after Morgan exited the fire escape. According to Casey, he had given police a statement denying that he had seen Morgan with a gun. This was contradicted by the post-conviction testimony of Elkhart Police Captain Cris Seymore, who testified that Casey did not even mention Morgan's name in his police interview. As such, it is not clear that Casey had made any pretrial statement tending toward exculpation of Morgan. At most, he had claimed not to have seen Morgan with a gun.

[12] On the other hand, defense counsel presented the trial testimony of a claimed eyewitness, Maurice Starkey ("Starkey"). Starkey testified that he was, at the time of Dixon's shooting, a roommate of Bush. Starkey testified that he had a "good view" and saw Bush fire "maybe six shots" at Dixon, but he had not initially realized that Dixon had been struck. (Trial Tr. at 430, 643.) According to Starkey, he took his hysterical girlfriend back to Chicago and while there he first heard that there had actually been a fatal shooting and a non-fatal shooting. Not wanting to be labeled a "snitch," he did not contact police. (Trial Tr. at 647.)

[13] In closing argument, defense counsel then invited the jury to conclude that Bush, not Morgan, shot Dixon. That version of events was rejected by the jury. Trial counsel's efforts and strategy, although they did not ultimately achieve the result desired by Morgan, were not so unreasonable as to constitute ineffective assistance of counsel. *See Badelle v. State*, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to seek out additional witnesses was a judgment call within the wide range of reasonable assistance), *trans. denied.*

[14] Morgan did not make a "clear showing of injury and prejudice," such that trial counsel may be considered ineffective for failure to call Casey as a witness. *Osborne*, 481 N.E.2d at 380.

# Newly Discovered Evidence

[15] Indiana Post-Conviction Rule 1(1)(a)(4) provides that one who has been convicted of a crime may seek post-conviction relief to assert a claim "that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice."

[16] A new trial on the basis of newly-discovered evidence is to be granted only when nine requirements are demonstrated: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. *Bunch v. State*, 964 N.E.2d 274, 283 (Ind. Ct. App. 2012), *trans. denied*.

[17] At Morgan's trial, Dorothy Rogers ("Rogers") testified for the State. She testified that she had gone to the apartment building where the shootings occurred in order to purchase drugs. Rogers further testified that Morgan "was shooting," from his position on the ground while others on the fire escape were "running trying to get away from the bullets." (Trial Tr. at 404, 409.) According to Rogers, Morgan later told her that he had shot "that m----- f---- [who had] killed his brother." (Trial Tr. at 405.) Rogers testified that she had then made contact with police and indicated "that she had something she felt like she needed to say." (Trial Tr. at 406.)

[18] By the time of the post-conviction hearing, Rogers asserted that she had an improved memory and desired to recant her trial testimony. When she was an active user of crack cocaine, Rogers had felt intimidated or harassed by the police. Now sober, she claimed that her trial testimony against Morgan had been coerced and was false. In her post-conviction testimony, Rogers explicitly denied that she saw Morgan shooting. Thus, Rogers provided testimony in impeachment of her trial testimony.

[19] In her recantation testimony, Rogers' responses were selective. She claimed to recall details of the shooting but at the same time claimed to be unable to recall the substance of either her trial testimony or statement to police. She did not recall approaching the police. She could not recall whether her statements and trial testimony were consistent. The post-conviction court found that Rogers' recantation was not worthy of credit.

[20] In general, whether a post-conviction witness's testimony is worthy of credit is a factual determination to be made by the trial judge who has the opportunity to see and hear the witness testify. *Bunch*, 964 N.E.2d at 292. It is not within the province of the appellate court to replace a trial judge's assessment of credibility with its own. *Id.* We thus accept the determination of the post-conviction court that Rogers' post-conviction testimony is not worthy of credit. Morgan did not establish the nine prerequisites for a new trial on the basis of newly-discovered evidence.

# Conclusion

Morgan was not denied the effective assistance of trial counsel. He did not show entitlement to a new trial on a claim of newly-discovered evidence. Accordingly, the post-conviction court properly denied the petition for post-conviction relief.

Affirmed.

Bradford, J., and Altice, J., concur.