

FILED

Jul 16 2018, 10:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jermaine Jackson, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | July 16, 2018 <br><br> Court of Appeals Case No. 49A02-1712-CR-2899 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila A. Carlisle, Judge <br><br> Trial Court Cause No. 49G03-1701-F1-3202 |

**Najam, Judge.**

## Statement of the Case

[1] Jermaine Jackson appeals his convictions for attempted murder, a Level 1 felony; three counts of criminal recklessness, as Level 6 felonies; and carrying a handgun without a license, as a Class A misdemeanor, following a jury trial.

He presents a single issue for our review, namely, whether the trial court abused its discretion when it admitted evidence of his prior bad acts. We affirm.

## Facts and Procedural History

[2] Jackson and Tranitra Tipton were previously married and had two children together, A.J. and J.J. In January 2016, after Jackson and Tipton had divorced, Tipton began dating Troy Pollard, and they had a child together, N.P., who was born in November 2016.

[3] On November 11, 2016, Tipton dropped off A.J. and J.J. at their daycare center, and Jackson was there. Jackson saw that J.J.'s hair had been cut and asked Tipton who had cut it. When Tipton told Jackson that Pollard had cut J.J.'s hair, Jackson "got angry," yelled at Tipton, threatened to beat her up, and threatened to "kill [Pollard] if he touch[ed J.J.'s] hair again." Tr. Vol. 2 at 239. Later that afternoon, when Tipton and Pollard returned to the daycare center to pick up the children, Jackson was there and confronted Pollard. Jackson began threatening Pollard and said, "N****, I [will] kill you." *Id.* at 241. Tipton called the police, and Jackson left the scene with the children.

[4] On January 20, 2017, Pollard, Tipton, A.J., J.J., and N.P. arrived home at 9:45 p.m. after an evening out. They were about to exit their minivan when Pollard saw a man running towards him. As the man got closer, Pollard recognized the man as Jackson. Jackson was wearing a black hoodie sweatshirt that he often wore, and he was wearing black sweatpants and black tennis shoes. When Jackson reached the minivan, he fired a semi-automatic handgun at Pollard

four or five times,[1] striking him twice in his chest and once in his back, near his spine. Tipton saw that the shooter was Jackson before he fled the scene, and she yelled, "That was Jermaine." *Id.* at 230. Tipton then drove Pollard to the hospital. On the way there, Pollard called his mother and told her that Jackson had shot him.

[5] At the hospital, officers with the Indianapolis Metropolitan Police Department ("IMPD") interviewed Pollard and Tipton, who both identified Jackson as the shooter. Tipton gave the officers Jackson's address and phone number, and she gave them the address for Jackson's aunt living in Chicago. When Pollard was released from the hospital, he, Tipton, and the children went to Michigan to stay with relatives, and they stayed there until Jackson was apprehended at his aunt's house in Chicago on January 30. In the course of their investigation, IMPD officers discovered that Jackson's cell phone had "pinged" two cell phone towers at 8:56 p.m. and 10:00 p.m. on January 20, at locations approximately fifteen minutes and ten minutes away from the scene of the shooting, respectively. Tr. Vol. 3 at 120.

[6] The State charged Jackson with attempted murder, as a Level 1 felony; three counts of criminal recklessness, as Level 6 felonies; carrying a handgun without a license, as a Class A misdemeanor; unlawful possession of a firearm by a domestic batterer, a Class A misdemeanor; and invasion of privacy, as a Class

---

[1] Officers found four shell casings at the scene, but Pollard and Tipton found another shell casing in the minivan after they returned home from Michigan.

A misdemeanor. Prior to trial, the State filed a notice of intent to introduce evidence of other crimes, wrongs, or acts under Indiana Evidence Rule 404(b), namely, Jackson's threats to Pollard and Tipton in November 2016. Following a hearing, the trial court granted the State permission to introduce the Rule 404(b) evidence over Jackson's objection. Also prior to trial, the court dismissed the unlawful possession of a firearm by a domestic batterer on the State's motion, and the court ordered that the invasion of privacy charge would be severed and the trial would be bifurcated. At trial, Jackson's defense was that he was not the shooter. The first jury trial resulted in a mistrial after the jury could not reach a unanimous verdict. After the first phase of the second trial, a jury found Jackson guilty of attempted murder, carrying a handgun without a license, and three counts of criminal recklessness. The State dismissed the invasion of privacy count. The trial court entered judgment of conviction accordingly and sentenced Jackson to an aggregate term of thirty-five years executed. This appeal ensued.

## Discussion and Decision

[7] Jackson contends that the trial court abused its discretion when it admitted the evidence of threats he had made to Pollard and Tipton in November 2016. Jackson maintains that the "prior bad act evidence here was a single, isolated, one-minute-long incident between [Jackson and Pollard], occurring months before the charged offense." Appellant's Br. at 14. And he asserts that "the challenged evidence is not sufficiently probative of the two men's relationship

to justify its admission, and it unfairly suggested Jackson had a propensity to kill." *Id.* We cannot agree.

[8]     As our Supreme Court has explained:

> Generally, a trial court's ruling on the admission of evidence is accorded a great deal of deference on appeal. Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and only reverse if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015) (citations and quotation marks omitted).

[9]     Indiana Evidence Rule 404(b) generally prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

> Evidence Rule 404(b) is designed to prevent the jury from making the "forbidden inference" that prior wrongful conduct suggests present guilt. *Halliburton v. State*, 1 N.E.3d 670, 681 (Ind. 2013) (citing *Byers v. State*, 709 N.E.2d 1024, 1026-27 (Ind. 1999)). Or, as stated in *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind. 2003), the purpose behind Evidence Rule 404(b) is to "prevent[ ] the State from punishing people for their character, and evidence of extrinsic offenses poses the danger that the jury

will convict the defendant because . . . he has a tendency to commit other crimes." (internal quotation omitted). In assessing the admissibility of evidence under Evidence Rule 404(b), the trial court must first determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and then balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Halliburto*n, 1 N.E.3d at 681-82 (citing *Wilson v. State*, 765 N.E.2d 1265, 1270 (Ind. 2002)). The effect of Rule 404(b) is that evidence is excluded only when it is introduced to prove the forbidden inference of demonstrating the defendant's propensity to commit the charged crime. *Rogers v. State*, 897 N.E.2d 955, 960 (Ind. Ct. App. 2008), *trans. denied*.

*Laird v. State*, --- N.E.3d ---, No. 69A05-1707-CR-1709, 2018 WL 2994579, at *4 (Ind. Ct. App. June 15, 2018), *trans. pending*.

[10] Here, the State contends that the challenged evidence was not admitted to show Jackson's propensity to commit attempted murder; rather, it was admitted to show Jackson's hostility towards Pollard and his motive for shooting him. *See id.*; Evid. R. 404(b). And Jackson "acknowledges that evidence of motive is always relevant in the proof of a crime," citing *Ross v. State*, 676 N.E.2d 339, 346 (Ind. 1996). Appellant's Br. at 17.

[11] Still, Jackson maintains that the evidence of a single prior incident, specific to his anger over a haircut, is not probative of his motive here. In support of that contention, Jackson attempts to distinguish this case from those cited by the State in its brief on appeal, most notably *Iqbal v. State*, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004). In *Iqbal*, we observed that "[n]umerous cases have held

that where a relationship between parties is characterized by *frequent conflict*, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime." 805 N.E.2d 401, 408 (Ind. Ct. App. 2004) (emphasis added). Here, the evidence does not show a history of frequent conflicts between Pollard and Jackson. Indeed, in addition to the November 11, 2016, incident, the evidence shows only one other brief encounter between the two men prior to the January 2017 shooting.

[12] However, given the nature of the two separate encounters between the men on November 11, 2016—in particular, Jackson's explicit threats to kill Pollard over something as trivial as a child's haircut—we hold that the evidence of the November 11, 2016, incidents is probative of Jackson's hostility towards Pollard and his motive in the shooting only two and a half months later.[2] *See id.* (holding that defendant's prior threat to kill his wife, while holding a gun to her head, was "probative of the relationship between [the defendant and his wife] and his hostility towards her," and "highly relevant" to the issue of motive, where the threat had occurred more than three months prior to her murder). Indeed, defense counsel acknowledged at the Rule 404(b) hearing that the evidence "gives an idea [of] what the relationship between the two men" was

---

[2] Jackson's suggestion that, because there was no evidence that Pollard cut J.J.'s hair again after November 11, 2016, his threats on that date are not probative of motive is not well taken. That Jackson would threaten to *kill* his ex-wife and her boyfriend over a child's haircut is plainly indicative of a motive to kill regardless of whether the condition precedent, i.e., that Pollard cut J.J.'s hair again, did not occur.

like. Tr. Vol. 2 at 59. And the probative value of that evidence outweighed any prejudice to Jackson. *See Laird*, 2018 WL 2994579, at *4; *see also Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017) (stating trial court has "wide discretion" in making Rule 403 determination). Thus, the trial court did not abuse its discretion when it admitted the challenged evidence.

[13] Further, even if the trial court committed error in admitting the evidence of Jackson's prior threats against Pollard, that error was harmless.

> An error is harmless when it results in no prejudice to the "substantial rights" of a party. *Camm v. State*, 908 N.E.2d 215, 225 (Ind. 2009); Ind. Trial Rule 61.[] While there are important contextual variations to this rule,[] the basic premise holds that a conviction may stand when the error had no bearing on the outcome of the case. At its core, the harmless-error rule is a practical one, embodying "the principle that courts should exercise judgment in preference to the automatic reversal for error and ignore errors that do not affect the essential fairness of the trial."[] *United States v. Harbin*, 250 F.3d 532, 546 (7th Cir. 2001) (internal quotation marks omitted).

*Durden v. State*, ---N.E.3d---, No. 18S-CR-329, 2018 WL 3040338, at *4 (Ind. June 20, 2018).

[14] Here, at trial, Jackson alleged that Pollard and Tipton could not have identified him as the shooter given that it was dark outside and the encounter was brief. We disagree and hold that the evidence of Jackson's guilt was overwhelming. Pollard and Tipton, who had known Jackson for five years and had two children with him, both saw Jackson shoot Pollard. While the incident

occurred at night, and while the shooting happened over the course of seconds before Jackson fled the scene, both eyewitnesses identified him immediately, and Tipton even recognized the black hoodie sweatshirt Jackson was wearing at the time of the shooting. In addition, the cell phone tower records show that Jackson was using his cell phone in the area both before and after the shooting, which evidence Jackson has not challenged on appeal. In sum, Jackson cannot show that the admission of the evidence regarding the November 11, 2016, threats prejudiced his substantial rights. *See id.*

Affirmed.

Vaidik, C.J., and Pyle, J., concur.