## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 22 2019, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Vickie R. Yaser
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daryl Gilbert,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

July 22, 2019

Court of Appeals Case No.
18A-PC-2697

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

The Honorable Amy J. Barbar, Magistrate

Trial Court Cause No.
49G02-1506-PC-21035

**Bailey, Judge.**

# Case Summary

[1] Daryl Gilbert ("Gilbert") appeals the denial of his petition for post-conviction relief following his convictions for Murder[1] and Unlawful Possession of a Firearm by a Serious Violent Felon[2] in connection with the shooting death of Aaron Adams ("Adams"). Gilbert presents three issues for our review, which we consolidate and restate as whether he was denied the effective assistance of trial counsel. We affirm.

# Facts and Procedural History

[2] Gilbert was tried with his co-defendant, Tiandre Harris ("Harris"), who was also convicted of Murder. The relevant facts were recited by a panel of this Court in Harris's direct appeal:

> Sometime in August 2012, Harris, together with [Gilbert] and a third individual, purchased drugs from Darrell Newbern ("Newbern") and [Adams]. Newbern and Adams lived in separate residences at the corner of Michigan Street and Sherman Avenue in Indianapolis.
>
> About one week later, on August 26, 2012, individuals later identified as Harris and Gilbert hired a bootleg taxi that took them to a Valero gas station across the street from Newbern's and Adams's residences. Newbern had moved from the home

---

[1] Ind. Code § 35-42-1-1(1). Throughout this case, we refer to the versions of the statutes in effect at the time of Gilbert's offenses.

[2] I.C. § 35-47-4-5(c).

two days before, and his housemates, Jonathan Weathers ("Weathers") and Shanna Pigg ("Pigg") were in the process of moving their own belongings from the home when Harris and Gilbert arrived. A number of other individuals were gathered on the porch of the home, including several children. Adams was also seated on the porch.

Gilbert, standing on the side of the street adjacent to the gas station with a pistol in his right hand, started yelling at the group, demanding to see Newbern and insisting that Newbern had sold him some "bullsh-t dope." (Tr. at 144.) Weathers told Gilbert that Newbern had moved away and no longer lived at the residence. He also told Gilbert not to shoot at the porch of the home because there were children present.

Adams, still sitting on the porch, told one of the women to take the children inside. He then got up and began to walk toward the street with a cell phone in his left hand and his right hand in his pocket. Gilbert recognized Adams as having been involved in the drug transaction, saying "you look like the n——a that sold me that bad dope," raised his pistol, and began to fire at Adams. (Tr. at 191-92.) At that time, Harris, who was also present, began to fire his own gun at Adams. Adams ran to evade Harris and Gilbert, but was eventually shot twice: once in the head, and once in the buttocks. Adams, who was known to carry a small pistol in his front right pocket, was found with a pistol near his right hand and a cell phone near his left hand. Adams died as a result of the gunshot wound to his head.

Immediately after this, Harris and Gilbert fled on foot, then called for a ride. Police investigating the shooting interviewed several witnesses and, as a result of identifications from photographic arrays, arrested Harris and Gilbert.

*Harris v. State*, No. 49A04-1401-CR-45, slip. op. at 2-3 (Ind. Ct. App. Aug. 25, 2014), *trans. denied*.

[3]     The course of trial proceedings was recited by a panel of this Court on direct appeal of Gilbert's convictions:

> The State charged Gilbert with murder and possession of a firearm by a serious violent felon in connection with the shooting death of [Adams]. The case was bifurcated. The murder charge was tried to a jury, and Gilbert was tried with his co-defendant, [Harris]. The jury deadlocked, so Gilbert and the State both moved for a mistrial. The trial court granted the motion and subsequently scheduled a second jury trial. [. . . .]
>
> The second trial began on December 9, 2013. Gilbert and Harris were once again tried jointly. [. . . .] The jury determined that Gilbert was guilty of murder. Next, the possession charge was tried to the bench, and the court determined that Gilbert was guilty. The court sentenced Gilbert accordingly, and this appeal followed.

*Gilbert v. State*, No. 49A02-1401-CR-37, slip. op. at 2 (Ind. Ct. App. Aug. 28, 2014) (record citation omitted). On direct appeal, Gilbert raised only the issue of whether his convictions on retrial following a mistrial violated Article 1, Section 12 (due course of law clause) and Article 1, Section 14 (double jeopardy clause) of the Indiana Constitution. *Id*. at 3. This Court affirmed. *Id.* at 4.

[4]     On June 12, 2015, Gilbert, *pro se*, filed a petition for post-conviction relief, which was amended by counsel on July 20, 2017, and again on March 15, 2018. The post-conviction court held an evidentiary hearing on the amended

petition on May 30, 2018. At the hearing, Gilbert's two trial attorneys, James Snyder ("Snyder") and Jason Bunch ("Bunch"), and Gilbert testified. On November 1, 2018, the post-conviction court entered its written order denying Gilbert's petition. This appeal ensued. Additional facts will be provided as necessary.

# Discussion and Decision

## *Standard of Review*

[5] The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). When appealing the denial of post-conviction relief, the petitioner appeals from a negative judgment. *Wilkes*, 984 N.E.2d at 1240. Thus, the appellant must establish that the evidence as a whole unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. *Id.* (citing *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000)) (quotation marks omitted). We review the post-conviction court's factual findings for clear error and owe no deference to its conclusions of law. *Id.*

## *Effectiveness of Trial Counsel*

[6] Gilbert contends he was denied the effective assistance of trial counsel in three respects: (1) trial counsel failed to tender instructions on lesser-included offenses, (2) trial counsel failed to object to the admission of, or move to strike,

certain evidence, and (3) the cumulative effect of trial counsel's errors amounted to ineffective assistance.[3]

[7] The Sixth Amendment to the U.S. Constitution guarantees a person accused of a crime the right to the assistance of counsel. U.S. Const. amend. VI. "'[T]he right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[8] Effectiveness of counsel is a mixed question of law and fact. *Id*. at 698. We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*. *Id*. To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and

---

[3] Because we conclude that in each instance counsel's performance was not deficient or, if in error, did not prejudice the defendant, we do not address Gilbert's third argument.

independent inquiries. *Strickland*, 466 U.S. at 697. A court deciding an ineffective assistance claim need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Id*. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id*.

[9] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id*. In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

# (1) Instructions on Lesser-Included Offenses

[10] Gilbert first complains that his trial counsel did not tender instructions for the lesser-included offenses of voluntary manslaughter[4] and reckless homicide.[5]

[11] At the post-conviction hearing, trial counsel testified that, as a matter of trial strategy, they did not request instructions on lesser-included offenses, choosing instead to pursue an all-or-nothing defense of self-defense.[6]  Attorney Bunch explained that Gilbert "believed he was not guilty by reason of self-defense" and "wanted to go for all or nothing."  (PCR Tr. 30.)  Lead counsel Snyder explained that while the evidence presented at trial would likely have supported lesser-included offenses, "our defense was self-defense" and "self-defense certainly is - contradicts a little bit a - an offer of voluntary.  It gives the jury an out.  So in general, when it's a self-defense case, it certainly potentially weakens

---

[4] "A person who knowingly or intentionally: (1) kills another human being . . . while acting under sudden heat commits voluntary manslaughter, a Class B felony.  However, the offense is a Class A felony if it is committed by means of a deadly weapon."  I.C. § 35-42-1-3(a)(1).  Voluntary manslaughter is a lesser-included offense of murder.  *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008).

[5] "A person who recklessly kills another human being commits reckless homicide, a Class C felony."  I.C. § 35-42-1-5.  "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."  I.C. § 35-41-2-2(c).  Reckless homicide is an inherently lesser-included offense of murder.  *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995).

[6] Indiana Code section 35-41-3-2(c) provides, in relevant part:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force.  However, a person:
>
> > (1) is justified in using deadly force; and
> >
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.

that trial strategy to offer lessers." (PCR Tr. 10-11.) Based on this testimony, the post-conviction court found that counsel "made a clear and considered decision to forgo lesser included instruction[s] for strategic reasons" and "arrived at the defense strategy in consultation with and by agreement of the defendant, Gilbert." (PCR App. Vol. II 164.)

[12] "One legitimate trial strategy for the defendant in a murder trial is an 'all-or-nothing' one in which the defendant seeks acquittal while realizing that the jury might instead convict of murder." *Watts*, 885 N.E.2d at 1233. Our supreme court has held that "a tactical decision not to tender a lesser included offense does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense." *Autrey*, 700 N.E.2d at 1141 (citing *Page v. State*, 615 N.E.2d 894, 895 (Ind. 1993)).

[13] In light of *Autrey*, Gilbert concedes that an all-or-nothing defense can be a reasonable trial strategy. However, he attempts to distinguish *Autrey* by arguing that "[w]hat makes this case different is the second chance posture of the trial." (Appellant's Br. 27.) He contends that because his first trial ended in a mistrial, his counsel was aware that his self-defense claim was unpersuasive to the majority of the first jury. Further, trial counsel opined that second trials generally benefit the State. Therefore, Gilbert concludes that trial counsel should not have acquiesced to his preferred strategy and that the decision to adopt this approach was particularly detrimental to him.

But as our supreme court has noted, an all-or-nothing strategy that results in the defendant's conviction does not necessarily rise to the level of ineffective assistance. *Autrey*, 700 N.E.2d at 1142 ("The fact that the jury found the defendant guilty does not make this strategy deficient."). Counsel was aware that the evidence may have supported lesser-included offenses, but consciously chose to forgo requesting the instructions after consultation with Gilbert. Just as in *Autrey*, we hold that trial counsel's calculated strategy "was a tactical decision, not an error." *Id*. Gilbert has failed to demonstrate that trial counsel's strategy constituted performance "so deficient or unreasonable as to fall outside the objective standard of reasonableness." *Id*. at 1141.

## (2) Admission of Evidence

Gilbert next contends that trial counsel's failure to object to the admission of, or move to strike, certain evidence amounted to ineffective assistance. "To demonstrate ineffective assistance of counsel for failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection." *McKnight v. State*, 1 N.E.3d 193, 202 (Ind. Ct. App. 2013).

The post-conviction court found that trial counsel "generally acknowledged that possibly they could have objected or offered further argument, but they also testified that as a matter of strategy, they do not object at every opportunity because of the negative effect too many objections can have on juries." (PCR App. Vol. II 166-67.) The post-conviction court concluded that "assuming

*arguendo* that each of these instances presented a valid opportunity to object, taken individually or as a whole, the effect of this evidence did not appreciably alter [the] probable outcome of the trial." (PCR App. Vol. II 167.) We address each failure to object or move to strike in turn.

[17] *Testimony about Threats*. Gilbert first complains that due to counsel's failure to object or move to strike, the jury was permitted to consider otherwise inadmissible testimony of threats made against Newburn, who was involved in the drug deal between Gilbert, Harris, Adams, and Charles Danzy ("Danzy") approximately one week before the shooting.

[18] Newburn first testified that after the drug deal, "they called my phone threatening me" and "[t]hey was just talking about what they what they was gonna - -," at which point Gilbert's counsel objected on the basis of hearsay. (Trial Tr. 123.) The objection was sustained. Despite the court's favorable ruling, Gilbert argues that counsel's subsequent failure to move to strike the statements was unreasonable. At the post-conviction hearing, Snyder testified that "often" counsel would move to strike testimony that had already come in, but "there are also other times where we would . . . choose not to draw any further attention to it." (PCR Tr. 14.) The decision not to draw additional attention to certain evidence can be a reasonable defense strategy. *See Benefield v. State*, 945 N.E.2d 791, 799-800 (Ind. Ct. App. 2011) (holding that counsel's failure to object to inadmissible hearsay evidence was an objectively reasonable trial strategy to not call additional attention to the evidence). Here, we conclude that trial counsel's decision not to call additional attention to the

testimony once the objection was sustained did not fall outside the range of reasonable professional judgment.

[19] Newburn also testified about threats communicated to him by police during his identification of Harris and Danzy in photo arrays. Newburn testified that prior to showing him the photo arrays contained in Trial Exhibits 47 and 79, a police officer told Newburn that "the two guys was looking for me to kill me." (Trial Tr. 125.) Gilbert's counsel did not object.

[20] Gilbert argues that counsel's failure to object to the admission of the threat prejudiced him by implying he had a violent character and propensity to commit murder in contravention of Indiana Rule of Evidence 404(b). Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*.

[21] We first observe that Newburn did not attribute the threat to Gilbert, but rather "two guys." Following the admission of the evidence, the prosecution elicited testimony that when the police showed him the photo arrays, Newburn identified Harris and Danzy, not Gilbert, as two men present at the drug deal. Significantly, defense counsel elicited testimony on cross-examination that Newburn was also shown a third photo array in which he identified an

unknown third person, not Gilbert, as being at the deal. It is unclear how Gilbert was prejudiced by the admission of a threat made by "two guys" that Newburn failed to identify as Gilbert.

[22] Nevertheless, assuming that the jury would have attributed the threat to Gilbert based on Newburn's in-court identification of Harris and Gilbert, Gilbert has failed to show that the objection would have been sustained. We have previously held that a defendant's prior threat to kill a victim can be admitted to show the defendant's hostility to the victim and motive for later shooting him. *See Jackson v. State*, 105 N.E.3d 1142, 1146 (Ind. Ct. App. 2018). And, even if sustained, the admission would not have been prejudicial where there was other evidence of Gilbert's intent to kill; namely, that he was shouting for the person who had previously sold him bad drugs while holding a loaded firearm.

[23] *Testimony about Victim's Possible Motivations*. Gilbert next complains that trial counsel failed to object to and move to strike a witness's testimony about Adams's motivation for approaching Gilbert. Shawn Taylor ("Taylor") testified Adams "was a little bit street smart . . . and so he was kind of trying to keep the guy [Gilbert] on the other side of the street. Because the guy was already trying to - -." (Trial Tr. 163.) Harris's attorney objected on the basis of narrative, and the trial court sustained the objection.

[24] Gilbert argues that it was unreasonable for Gilbert's attorneys to not join in the objection and then move to strike the evidence. Gilbert contends that the evidence was prejudicial because it "depict[ed] the victim as a noble protector

rather than an armed enforcer[.]" (Appellant's Br. 36.) However, the jury had already heard evidence that Adams was involved in the drug deal the week before and likely armed with a gun when crossing the street toward Gilbert. (Trial Tr. 118, 149-50.) We therefore disagree with Gilbert's conclusion that Taylor's testimony about Adams's motivation "seriously undermined the self-defense strategy." (Appellant's Br. 37.) Further, with the objection already sustained, any argument on the part of Gilbert's attorneys would have drawn additional attention to the objectionable testimony, the avoidance of which is a reasonable defense strategy. *See Benefield*, 945 N.E.2d at 799-800.

[25] *Dying Declaration.* At trial, the deposition testimony of a deceased witness, Kelly McCreary ("McCreary"), was read into evidence over defense counsel's objection. Then, Indianapolis Metropolitan Police Department Detective Sergeant John Breedlove ("Detective Breedlove") testified that he had visited McCreary in the hospital prior to her death and McCreary admitted to lying to him during the investigation. Over defense counsel's hearsay objection, Detective Breedlove testified:

> A    Ah, she told me that she had three weeks to live. That she
>      wanted to make it right with junior, which I'm assuming
>      that was Jesus and um, she said that she wanted to make it
>      right with me because she lied to me and that I was right
>      that she hide [sic] them in her basement and - - but she
>      wouldn't let them keep their guns in her house.

> Q    And when, when she's saying them, who are you speaking
>      to her about?

A	Ah, Mr. Gilbert and Mr. Harris.

(Trial Tr. 256-57.) Gilbert's chief complaint on appeal is that in objecting on the basis of hearsay, Gilbert failed to further argue with the trial court that the statement should not be admissible as a dying declaration under Evidence Rule 804(b)(2) (hearsay exception based on the unavailability of a declarant).

[26] Here, the record shows that despite defense counsel's objection at the first trial, the trial court again ruled during a conference held outside the presence of the jury that the statement would be admissible as a dying declaration. (Trial Tr. 213-14.) Then, with the jury present and the witness on the stand, trial counsel objected on the basis of hearsay. The objection was overruled, and trial counsel presented no further argument. As a panel of this Court has observed, "[c]ounsel is not rendered inadequate for failing to make a futile objection." *Curtis v. State*, 905 N.E.2d 410, 418 (Ind. Ct. App. 2009) (citing *Minor v. State*, 641 N.E.2d 85, 91 (Ind. Ct. App. 1994), *trans. denied*). Having objected and been overruled, we hold that trial counsel's failure to argue further in front of the jury to exclude the evidence did not constitute deficient performance and was not prejudicial to his case. *See id.* (holding that defense counsel's failure to reiterate to the trial court an already-rejected argument regarding the exclusion of evidence was not prejudicial to the defendant).

[27] *Witness's Use of the Term "Mug Shot."* Finally, Gilbert complains that trial counsel failed to object to a witness's description of a photo array as "like the mug shot of different suspects[.]" (Trial Tr. 166.) Gilbert complains the term

"mug shot" implied to the jury he had a prior criminal history. At the post-conviction hearing, Snyder testified that he generally would not have objected to a witness's use of the term "mug shot" because "it's just a common term for . . . the photos that end up in a photo array" and "because it draws attention to something that people just kind of commonly know." (PCR Tr. 18.) "A decision to not object to evidence when the objection may be more damaging than the evidence is within the wide range of professionally competent assistance." *Stevens v. State*, 770 N.E.2d 739, 752 (Ind. 2002), *cert. denied*. Further, when looking at the evidence presented as a whole, the reference to "mug shot" was inconsequential. Gilbert has failed to show that he suffered prejudice from this single fleeting reference.

[28]     In sum, we hold that Gilbert has not established that the evidence as a whole unmistakably points to a conclusion contrary to the post-conviction court's decision that, even if trial counsel's failure to object was in error, the effect of this evidence did not appreciably alter the probable outcome of the trial.

# Conclusion

[29]     Gilbert has failed to demonstrate that he was denied the effective assistance of trial counsel. The post-conviction court properly denied the petition for post-conviction relief.

[30]     Affirmed.


Riley, J., and Pyle, J., concur.